**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **Valtrus Innovations Ltd. and Key Patent Innovations, Ltd.,** | § § § | |
| **Plaintiff** | § § | |
| **v.** | § § | **CIVIL ACTION NO.** |
| **SAP America, Inc. and SAP, SE.** | § § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § § § | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Valtrus Innovations Limited ("Valtrus") and Key Patent Innovations Limited ("KPI") (collectively, "Plaintiffs"), by and through its undersigned counsel, bring this complaint for patent infringement and damages against Defendants SAP America, Inc. and SAP, SE (together, "SAP" or "Defendants") and would respectfully show the Court as follows:

## PARTIES

1.      Valtrus is the successor-in-interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor, subsidiary, and affiliate companies (collectively, "HPE").  Valtrus is an Irish entity duly organized and existing under the laws of the Republic of Ireland.  The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.  HPE's worldwide corporate headquarters is located in Houston, Texas.  One of HPE's primary US facilities is located in Plano, Texas.

2.      Plaintiff KPI is the beneficiary of a trust pursuant to which Valtrus owns, holds, and asserts the Asserted Patents.  KPI is an Irish entity duly organized and existing under the laws of

the Republic of Ireland.  The address of the registered office of KPI is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3.    On information and belief, Defendant SAP America, Inc. ("SAP America") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 3999 West Chester Pike, Newton Square, Pennsylvania 19073.  SAP has a regular and established place of business at 7500 Windrose Avenue, Suite 250, Plano, Texas 75024. On information and belief, SAP America may be served with process through its registered agent at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas, 75201.

4.    On information and belief, Defendant SAP, SE is a corporation duly organized and existing under the laws of Germany with a place of business at Dietmar-Hopp-Allee 16, Walldorf, Baden-Wurttemberg, 69190. On information and belief, SAP America is a subsidiary of SAP, SE.

5.    On information and belief, Defendant SAP, SE and/or its employees or officers direct and/or control the actions of its direct and indirect subsidiaries.  On information and belief, SAP, SE and/or its employees or officers direct and/or control the actions of these entities by, for example, inducing and contributing to the actions complained of herein.

## PATENTS IN SUIT

6.    Valtrus is the assignee of and owns all right and title to U.S. Patent Nos. 7,856,420 (the "'420 Patent"); 8,515,916 (the "'916 Patent"); 8,379,538 (the "'538 Patent"); and 9,229,984 (the "'984 Patent") (collectively, "the Asserted Patents").

7.    The Asserted Patents were developed by inventors working for HPE.  HPE developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to continuity of service and failover techniques for distributed datacenter computer systems; enterprise IT infrastructures that enable zero latency enterprise (ZLE) and real time

2

integration of enterprise services; and database archiving techniques that increase performance and efficiency of database archiving processes and components.

8.      The '420 Patent, entitled Zero Latency Enterprise Enriched Publish/Subscribe, was duly and lawfully issued on December 21, 2010.  A true and correct copy of the '420 Patent is attached hereto as Exhibit 1.

9.      The '420 Patent has been in full force and effect since its issuance.  Valtrus owns by assignment the entire right and title in and to the '420 Patent, including the right to seek damages for any infringement thereof.

10.     The '916 Patent, entitled Data Archiving Methods and Data Archiving Apparatus, was duly and lawfully issued on August 20, 2013.  A true and correct copy of the '916 Patent is attached hereto as Exhibit 2.

11.     The '916 Patent has been in full force and effect since its issuance.  Valtrus owns by assignment the entire right and title in and to the '916 Patent, including the right to seek damages for any infringement thereof.

12.     The '538 Patent, entitled Model-Driven Monitoring Architecture, was duly and lawfully issued on February 19, 2013.  A true and correct copy of the '538 Patent is attached hereto as Exhibit 3.

13.     The '538 Patent has been in full force and effect since its issuance.  Valtrus owns by assignment the entire right and title in and to the '538 Patent, including the right to seek damages for any infringement thereof.

14.     The '984 Patent, entitled Parameter Expressions for Modeling User Defined Function Execution in Analytical Data Processing Systems, was duly and lawfully issued on January 5, 2016.  A true and correct copy of the '984 Patent is attached hereto as Exhibit 4.

3

15.    The '984 Patent has been in full force and effect since its issuance.  Valtrus owns by assignment the entire right and title in and to the '984 Patent, including the right to seek damages for any infringement thereof.

## JURISDICTION AND VENUE

16.    Plaintiffs incorporate by reference the preceding paragraphs of their Complaint.

17.    This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

18.    This District has general and specific personal jurisdiction over Defendants because, directly or through intermediaries, Defendants have committed acts within this District giving rise to this action; are present in and transact and conduct business, directly, and/or indirectly, in this District and the State of Texas; and transact and conduct business with residents of this District and the State of Texas.

19.    Plaintiffs' causes of action arise, at least in part, from Defendants' contacts with and activities in and/or directed at this District and the State of Texas.

20.    Defendants have infringed the Asserted Patents within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted Patents, including without limitation products that, when made or used, practice the claimed methods of the Asserted Patents.  Defendants, directly and through intermediaries, make, use, sell, license, offer for sale, import, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products and services in or into this District and the State of Texas.  Defendants

4

regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

21.     This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq.*

22.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

23.     Defendants are doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States, and have committed acts of infringement in this district. SAP America has a regular and established place of business in this Judicial District including: 7500 Windrose Avenue, Suite 250, Plano, Texas 75024.   On information and belief, each Defendant makes, uses, sells, offers to sell, and/or imports infringing products into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable one.  Upon information and belief, each Defendant has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District.

24.     Venue is further proper in this District over SAP, SE because it is a foreign corporation.

**<u>FIRST CLAIM</u>**

**(Infringement of the '420 Patent)**

25.     Plaintiffs re-allege and incorporate herein by reference the preceding paragraphs of their Complaint.

26.     The '420 Patent is generally directed to an information technology (IT) infrastructure that enables a zero latency enterprise (ZLE) through real time integration of

enterprise services, business, processes, applications and data, and optimizes information exchange between enterprise applications.

27.    Defendants have been on notice of the '420 Patent and a specific factual basis for their infringement of the '420 Patent since at least the filing of this Complaint.  On information and belief, Defendants have not taken any action to stop their infringement.

28.    Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '420 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software for performing a method for enriched publish and subscribe in an enterprise running as a zero latency enterprise (ZLE) experiencing a plurality of events, for example, that enable, in response to an event, publishing to a central repository one or more messages containing information from that event; aggregating information from the plurality of events in the central repository; updating the aggregated information with information from the published messages; and creating enriched messages by enriching the messages with information from that event and/or corresponding information extracted from the central repository; and subscribing the enriched messages (excluding any products licensed under the '420 Patent).  An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '420 Patent is attached as Exhibit 5.

29.    Defendants also indirectly infringe the '420 Patent under 35 U.S.C. § 271(b) and (c).

30.    Defendants knowingly, intentionally actively aid, abett, and induce others to directly infringe at least claim 1 of the '420 Patent, by, for example, selling and offering access to (and encouraging use of) hardware and/or software for performing a method for enriched publish

and subscribe in an enterprise running as a zero latency enterprise (ZLE) experiencing a plurality of events, for example, that enable, in response to an event, publishing to a central repository one or more messages containing information from that event; aggregating information from the plurality of events in the central repository; updating the aggregated information with information from the published messages; and creating enriched messages by enriching the messages with information from that event and/or corresponding information extracted from the central repository; and subscribing the enriched messages.  For instance, SAP advertises that the SAP Event-Driven Cloud Integration Architecture ensures data consistency, greater agility and scalability of applications, and real-time message processing. *See* Exhibit 5.

31.    Defendants contribute to the direct infringement of at least claim 1 of the '420 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '420 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example, Defendants provide, own, operate, sell, offer to sell, lease, and/or import various hardware and software for performing a method for enriched publish and subscribe in an enterprise running as a zero latency enterprise (ZLE) experiencing a plurality of events, for example, that enable, in response to an event, publishing to a central repository one or more messages containing information from that event; aggregating information from the plurality of events in the central repository; updating the aggregated information with information from the published messages; and creating enriched messages by enriching the messages with information from that event and/or corresponding information extracted from the central repository; and subscribing the enriched messages (such as that shown in Exhibit 5) that are not a staple article of commerce and are incapable of substantial noninfringing use.

32.     Defendants' ongoing infringement is willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

### (Infringement of the '916 Patent)

33.     Plaintiffs re-allege and incorporate herein by reference the preceding paragraphs of their Complaint.

34.     The '916 Patent is generally directed to, for example, methods and systems for database archiving that increase archiving performance by reusing a relational data structure from a prior archiving iteration in subsequent archiving iteration(s) and/or reduce the time and resources needed to generate a relational data structure for an archiving process by storing and reusing at least a portion of one or more previously generated relational data structures.

35.     Defendants have been on notice of the '916 Patent and a specific factual basis for their infringement of the '916 Patent since at least the filing of this Complaint.  On information and belief, Defendants have not taken any action to stop their infringement.

36.     Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '916 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software for performing a data archiving method, for example, that enable storing a relational data structure generated in connection with a first iteration of an archiving process, determining a status of the relational data structure, and using the relational data structure in the second iteration of the archiving process if the status indicates the relational data structure has been validated (excluding any products licensed under

the '916 Patent).  An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '916 Patent is attached as Exhibit 6.

37.    Defendants also indirectly infringe the '916 Patent under 35 U.S.C. § 271(b) and (c).

38.    Defendants knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '916 Patent by, for example, selling and offering access to (and encouraging use of) hardware and/or software for performing a data archiving method, for example, that enable storing a relational data structure generated in connection with a first iteration of an archiving process, determining a status of the relational data structure, and using the relational data structure in the second iteration of the archiving process if the status indicates the relational data structure has been validated.  For instance, SAP advertises that SAP's data and document archiving functionality relieves the burden on databases by removing it from the database while maintaining its availability.  *See* Exhibit 6.

39.    Defendants contribute to the direct infringement of at least claim 1 of the '916 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '916 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example, Defendants provide, own, operate, sell, offer to sell, lease, and/or import various hardware and software for performing a data archiving method, for example, that enable storing a relational data structure generated in connection with a first iteration of an archiving process, determining a status of the relational data structure, and using the relational data structure in the second iteration of the archiving process if the status indicates the relational data structure has been validated (such as that shown in Exhibit 6) that are not a staple article of commerce and are incapable of substantial noninfringing use.

40.     Defendants' ongoing infringement is willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of the '538 Patent)

41.     Plaintiffs re-allege and incorporate herein by reference the preceding paragraphs of their Complaint.

42.     The '538 Patent is generally directed to, for example, new architectures and tools for use in monitoring systems, including systems and methods for providing a model-driven monitoring architecture that use machine-readable monitoring models for enabling elements of a monitoring system to recognize configuration changes in the system being monitored and autonomously adapt thereto, which can improve the efficient use of resources and the reliability of data delivery.

43.     Defendants have been on notice of the '538 Patent and a specific factual basis for their infringement of the '538 Patent since at least on or about September 7, 2022.  On information and belief, Defendants did not take any action to stop their infringement.

44.     Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 7 of the '538 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software for providing a machine-readable monitoring model that describes (a) a configuration of a monitoring environment and (b) a metric model identifying which monitoring data is collected at a data collection agent, where an element of the monitoring environment reads the machine-readable monitoring model and adapts its operation to the configuration defined by

the model, including including adapting to the metric model.  An exemplary claim chart concerning

one way in which SAP infringes claim 7 of the '538 Patent is attached as Exhibit 7.

45.    Defendants also indirectly infringe the '538 Patent under 35 U.S.C. § 271(b) and

(c).

46.    Defendants knowingly, intentionally actively aided, abetted, and induced others to

directly infringe at least claim 7 of the '538 Patent by, for example, selling and offering access to

(and encouraging use of) hardware and/or software for providing a machine-readable monitoring

model that describes (a) a configuration of a monitoring environment and (b) a metric model

identifying which monitoring data is collected at a data collection agent, where an element of the

monitoring environment reads the machine-readable monitoring model and adapts its operation to

the configuration defined by the model, including including adapting to the metric model.  For

instance, SAP advertises that Solution Manager is for autonomous Application Lifecycle

Management (ALM), and is intended for all customers and landscapes.  It further advertises that

Solution Manager is a robust solution that can increase the reliability of solutions and lower total

cost of ownership.  SAP also provides the information needed to install, upgrade, and configure

SAP Solutoin manager.  *See* Exhibit 7.

47.    Defendants contribute to the direct infringement of at least claim 7 of the '538

Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '538 Patent, a

material part of a claimed invention, where the material part is not a staple article of commerce

and is incapable of substantial noninfringing use.  For example, Defendants provide, own, operate,

sell, offer to sell, lease, and/or import various hardware and software for providing a machine-

readable monitoring model that describes (a) a configuration of a monitoring environment and (b)

a metric model identifying which monitoring data is collected at a data collection agent, where an

element of the monitoring environment reads the machine-readable monitoring model and adapts its operation to the configuration defined by the model, including including adapting to the metric model (such as that shown in Exhibit 7) that are not a staple article of commerce and are incapable of substantial noninfringing use.

48.     Defendants' infringement is willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## **FOURTH CLAIM**

### **(Infringement of the '984 Patent)**

49.     Plaintiffs re-allege and incorporate herein by reference the preceding paragraphs of their Complaint.

50.     The '984 Patent is generally directed to systems for using parameter expressions for modeling user defined function execution in data processing systems, which can, for example, increase processing efficiency, data security, and the accuracy of processing results.

51.     Defendants have been on notice of the '984 Patent and a specific factual basis for their infringement of the '984 Patent since at least on or about March 4, 2022.  On information and belief, Defendants did not take any action to stop their infringement.

52.     Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '984 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software for (a) a query compiler to identify a call to a user defined function, including an input expression that defines input values for the user defined function and a parameter expression, comprising a key and a value pair where key is the name of the parameter field metadata and the

value is a constant or an expression that evaluates to a constant value at the time of invoking the user, for the user defined function, within a query and (b) a processing engine to execute the user defined function to provide a function output according to the input expression and the parameter expression. An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '984 Patent is attached as Exhibit 8.

53.    Defendants also indirectly infringe the '984 Patent under 35 U.S.C. § 271(b) and (c).

54.    Defendants knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '984 Patent by, for example, selling and offering access to (and encouraging use of) hardware and/or software for (a) a query compiler to identify a call to a user defined function that includes an input expression and a parameter expression, comprising the name of the parameter field metadata and a constant or an expression that evaluates to a constant value, and (b) a processing engine to execute the user defined function to provide a function output according to the input expression and the parameter expression. For instance, SAP advertises that user-defined functions enable the performance of complex tasks using external program code, and they can be used, for example, to perform complex calculations based on characteristic values in the configuration, complex validity checks, efficient operations that overcome limitations of dependency syntax, arbitrary calls to external programs, and encapsulation of complex algorithms into manageable, reusable code. *See* Exhibit 8.

55.    Defendants contribute to the direct infringement of at least claim 1 of the '984 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '984 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate,

sell, offer to sell, lease, and/or import various hardware and software for (a) a query compiler to identify a call to a user defined function that includes an input expression and a parameter expression, comprising the name of the parameter field metadata and a constant or an expression that evaluates to a constant value, and (b) a processing engine to execute the user defined function to provide a function output according to the input expression and the parameter expression (such as that shown in Exhibit 8) that are not a staple article of commerce and are incapable of substantial noninfringing use.

56.    Defendants' infringement is willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against SAP as follows:

A.  That SAP has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe one or more of the applicable Asserted Patents;

B.  That SAP's infringement of one or more of the applicable Asserted Patents has been willful;

C.  That SAP pay Plaintiffs damages adequate to compensate Plaintiffs for SAP's past infringement of each of the Asserted Patents, and present and future infringement of the applicable Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

D.  That SAP pay Plaintiffs prejudgment and post-judgment interest on the damages assessed;

E.  That SAP pay Plaintiffs enhanced damages pursuant to 35 U.S.C. § 284;

F.  That SAP be enjoined from infringing the applicable Asserted Patents, or if its infringement is not enjoined, that SAP be ordered to pay ongoing royalties to Plaintiffs for any post-judgment infringement of the applicable Asserted Patents;

G. That this is an exceptional case under 35 U.S.C. § 285; and that SAP pay Plaintiffs' attorneys' fees and costs in this action; and

H. That Plaintiffs be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Respectfully submitted,

Date: May 19, 2025

*Of Counsel*:

Andrea L. Fair
  Texas Bar No. 24078488
Claire Abernathy Henry
  Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

*/s/ Matthew G. Berkowitz by permission*
*Claire Abernathy Henry*
Matthew G. Berkowitz – LEAD ATTORNEY
Navid C. Bayar
Aaron Morris
**REICHMAN JORGENSEN**
  **LEHMAN & FELDBERG LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
nbayar@reichmanjorgensen.com
amorris@reichmanjorgensen.com

Philip J. Eklem
**REICHMAN JORGENSEN**
  **LEHMAN & FELDBERG LLP**
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
peklem@reichmanjorgensen.com

Patrick Colsher
**REICHMAN JORGENSEN**
  **LEHMAN & FELDBERG LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com

15

*Attorneys for Plaintiffs*
*Valtrus Innovations, Ltd. and Key Patent*
*Innovations, Ltd.*